We'll call the first case then Vasquez v. Galdamez v. Barr. Mr. Nguyen Dang, we'll hear from you first. Thank you. Good morning and may it please the Court. I am Minh Nguyen Dang, for Petitioners Paula Vasquez-Galdamez and her three children. When Ms. Vasquez-Galdamez applied for asylum, she reasonably relied on matter of ARCG. But during her appeal, the Attorney General overruled ARCG. In the circumstances, the Board should have remanded her case to the immigration judge so that Ms. Vasquez-Galdamez could amend her application and put on new evidence in light of the new decision. First, Ms. Vasquez-Galdamez had a statutory and constitutional right to a fair hearing. Under Section 1229A, asylum applicants have the right to a reasonable opportunity to present evidence on their own behalves. And that's consistent with the constitutional right to due process, meaning an opportunity to be heard at a meaningful time and in a meaningful manner. Second, in a very similar situation, the Seventh Circuit recognized that a remand is required. That's the Chen case that we cite in our briefs. As the Seventh Circuit explained in that case, an applicant should have an opportunity to respond to a government's critical shift in position. Third, this comports with the common sense understanding of fairness. Counsel, let me ask you at that juncture. In order for your position to prevail, it would require that this matter of AB be a change in the law, a critical shift in position. But since the opening briefs, it appears there have been a number of Court of Appeals decisions which have held that matter of AB was not a change in the law and that it was not a critical shift in position. For instance, in the Ninth Circuit just last month, Diaz-Renoso v. Barr, that court said matter of AB did not announce a bright-line rule concerning applications on domestic violence. Matter of AB did not announce a new rule. It merely reiterated the well-established principle that a social group must exist independently of the harm asserted. So if we were to agree with, and I think there are four circuits that have passed on this similarly, then there would not be a change of law which would not entitle your client to make a due process argument. Your Honor, at the very least, what matter of AB did, and this is undisputed, is that it overruled matter of ARCG. It expressly did so. And as the government acknowledges in its briefs in this court, applicants, immigration judges, and the board itself read matter of ARCG for the proposition that victims of domestic violence could qualify for asylum on that basis. Now, the Attorney General might believe that, as apparently he does, that matter of ARCG was wrongly decided, and that matter of AB simply restores the law to what it was. But I don't think there's any way we can get around the fact that— Well, you have four circuits that appear to say that's correct. Perhaps, Your Honor, but ARCG was precedential, and it was a case on which people reasonably relied. I think it's undisputed that had Ms. Vazquez-Galdamez known that matter of AB would govern her case, she would have put on her application very differently. She would have put on a different PSG and tried to put on different evidence to meet that, to meet the standard of matter of AB. Let's assume that there is a change in the law and that these other circuit court opinions don't apply. What would entitle the petitioner in this case to raise a new particular social group? It would seem like that this is going back to add a cause of action, in effect, that existed and the petitioner would have known it existed and that the facts existed at the time the initial petition was filed. Yet, the petitioner chose not to plead in the alternative. What would entitle her to, in essence, a do-over? Your Honor, we don't see it as a do-over. We see it as giving Ms. Vazquez-Galdamez her first chance. As the Seventh Circuit explained in Chen, the law was clear when she applied for asylum. ARCG was clear that she relied on that basis on which victims of domestic violence could qualify for asylum on that basis. What happened was that AB changed that standard. We don't view it as adding a new cause of action that previously existed. It's that her existing cause of action, particular social groups, asylum on the basis of particular social groups, the legal standard within that category of asylum claim changed. You want to start with a new particular social group, but you would have known that social group at that time and all the facts that existed for that. I mean, nothing has happened in the interim that doesn't exist at that time. So, why would you get to raise a new one now? It's true that those facts existed, but at the time Ms. Vazquez-Galdamez did not know that she needed to put it on. It wouldn't have made sense to require applicants to put on different particular social groups and all the evidence that goes with it. Yes, Your Honor. I have a question. Now, what is the new or different social group that you would seek to put on? Your Honor, based on the record so far, one of the potential social groups that she could put on, for instance, is unmarried mothers who own property in Honduras. We believe that that particular social group would meet the strictures set out in Matter of AB. At the time, though, there was no case like Matter of ARCG, which clearly held that such a social group could be cognizable under the asylum laws. What Ms. Vazquez-Galdamez did was reasonably rely. Yes, Your Honor. There was time between the Matter of AB coming out. It was six weeks between the Matter of AB coming out and the BIA's dismissal of petitioner's appeal. So there was six weeks in there that petitioner could have sought to raise this after AB came out. Yes, Your Honor. But at the time, Ms. Vazquez-Galdamez did not know that what the board was going to do was apply Matter of AB without giving her the chance to address it. And when, in fact, that is what the board did in her motion to reconsider, she did raise this argument to the board at the first available opportunity. Assuming you have a due process argument and you didn't get a fair hearing, how could you show prejudice at this point? I think, Your Honor, that showing prejudice at this point would be sort of needlessly speculative. We can't know what the evidence will be. And more importantly, we can't know what the immigration judge, who is the fact finder and who makes credibility determinations and who weighs the evidence, we can't know how the immigration judge would view all of the evidence, both the new and the old, in light of the new social group and in light of the new standards. So we think that in the circumstance, the safest course would be to remand, as in fact the Seventh Circuit did in Chen, without requiring any showing of prejudice. Well, in this case, there are two findings by the – well, actually three – by the Board of Immigration Appeals. And the first was that the respondent, as a matter of fact, had not shown that Honduran society in general perceives or recognizes Honduran women who are unable to leave their relationships. So even if you were able to use that original one, there was a fact finding that I don't think that you challenged. Is that correct? That's correct, Your Honor, but there was no point in challenging that finding once the board held that as a matter of law under AB, such a social group could not be recognizable in the first instance. All of the board's fact findings were predicated on that previous social group, one that is now invalidated under a matter of AB. So all of the facts, we think, should be – the immigration judge should have the opportunity to review all of the facts, old and the new, in light of the new social group and in light of the standard under AB. And we think it's just too speculative at this point to say how the judge would come out and when the judge has all of the facts and the standards. So what would the new social group be? As we've proposed in the briefs, one potential social group could be unmarried mothers who own property, which, under the facts of the case, would seem to apply to Nesvazquez-Galdanes. Now, as I mentioned – So you want a remand for that particular social group or one to be designated at a later time? Yes, Your Honor, the fact is we just haven't had the opportunity to go through the record and to figure out what the right social group is in light of the standards set out in matter of AB. But that certainly could be a plausible social group. Certainly, the government has not contested that that could be a recognizable social group under the new standards. All right, well, let's assume that you have a due process claim and assume that you want to present either unwed mothers who own property or a particular social group yet to be determined. If you did that, the BIA made two other findings. One was that the Honduran government was willing and able to control the abuser in this case. And the other was that the petitioner would be able to relocate in Honduras. Tell us how choosing a new social group would affect either of those findings. Yes, Your Honor. Again, it's important to recognize that those findings were made in the context of the previous social group. So the evidence may show, for instance, that unmarried mothers who own property are particularly vulnerable in Honduran society, that government institutions such as the police particularly fail to protect women's property rights in that circumstance. And the evidence may show, for instance, that precisely because of her property tie, Ms. Vasquez-Galdamez could not or was much harder for her to relocate within Honduras, certainly to relocate while also maintaining her property. In fact, her abuser's claim to her property, legal claim to her property, is a way in which the abuser could try to continue to persecute her, even when he was in El Salvador, as occasionally was the case. So, again, it's a situation where all of these facts have to be viewed in the light of the particular social group that the immigration judge was assessing. Yes, Your Honor. I'm not sure I understand your answer to Judge Agee's question. It seems to me that the finding was that if she were to call on the police to respond to the abuse, regardless of what motivated the abuse, that there would be a response. In other words, that the government was not simply standing by those types of claims. And so it seems to me that whether you however you define the social group, if it motivated the abuse, the abuse is still the fact that she's suffering and she would call the police based on the abuse, not on the fact that she owned property or not on the fact that the man did it because she was locked into a marriage or whatever the reason was. And I don't see how your point addresses the factual finding made by the agency. The question of the police's effectiveness, Your Honor, in responding to her call could well depend on how the police view her and view people in her case. The as the record shows, when she called the police, you think she would call the police and say, I own property and I'm being abused because I own property. She called the police because she had been hit or she'd been raped or she'd been abused or shoved out or whatever, threatened. She is sort of unrealistic to suggest she's going to explore the motivations of her attacker when calling the police. I agree, Your Honor. She might not. But the question is, how would the police and respond to her call? And the evidence shows that the police did respond in this case. But the response, frankly, was quite ineffective. And perhaps one of the reasons in which she was. That's another issue. But the question that Judge Agee raised is that was a factual finding. And your response was, well, if we had a different social group, it would be a different response. And the answer is, I can't see that. And that's that's really where I'm at. Your Honor, I think that that's something that the immigration judge could should explore, is whether or not the response would, in fact, be different if the police. You know, this we can't know for certain, but in the circumstances in the village in which she lived, it could be well known, for instance, that she owned property. And so in that regard, the police could have sympathy for her abuser if they shared his views. Again, this is a type of thing that should be explored on remand before the immigration judge, who ultimately should be the person who addresses all of the evidence and views all of them in light of the standards. So why do you say the police response in this case was ineffective? Well, Your Honor, the police did arrest her abuser and then released him the next day without consequence. And then he continued to abuse her for years afterwards. Well, you know, this is this is the first business day after a weekend and a holiday. And I would suggest that you could go to any domestic relations court in any county, in any state you wish to pick in this country, and you would find scores, hundreds of people who had been arrested over the weekend for domestic abuses, who are going to be released today. And I mean, that happens every week in the United States. How is that any different than what happened in Honduras? Well, Your Honor, I'm not sure I understand your question. If, in fact, the police are unable and unwilling to control abusers in this type of situation, that would seem to be. Yes, Your Honor. I think I understand what Judge Agee is saying. Based on your argument that the fact that he was arrested and released is some indication that the country of Honduras is unwilling to control the abuser and protect her. If that's the standard, then the same can be said to be true in America. Perhaps, Your Honor, I really can't. I don't really know how to respond to that. I'm not sure what the other evidence might show about an asylum claim from someone who suffers abuse in America under American standards. It seems like that would. Let's take this up on rebuttal. I think you're, if I'm reading the clock correctly, I think you're through the red light. And you have some rebuttal time. So why don't we hear from Mr. Tennyson? Good morning. May it please the court. Robert Tennyson for the government. Really, this case, as this court has been focusing on right now, boils down to one, I guess, what? You don't need to get to AB or any of that. The immigration judge and the board, in this case, made at least two, probably three, different independent dispositive findings. First, with respect to nexus, that the petitioner, regardless of whether her social group meets the standards for, I guess, what? To be considered a cognizable social group. That she didn't show a nexus between that social group and her harm. Specifically, that the harm she suffered was either due to inter-family disputes, that is, problems having to do with the children that she had from a previous marriage. Or to her purchase of, I guess, what? Her ownership of property and the petitioner's desire to get his hands on that property. Second, the board and the immigration court also found, independently, as this court has emphasized, that there wasn't state action in the case. That on the one occasion, in 2012, that she did go to the police. Not only did the police come and pick up the petitioner's husband and take him to jail. He was brought before a local magistrate the next day. And the magistrate said, if you have any future problems, at least according to her testimony, if you have any future problems, we can pick him up again. So, we have that second independent ground. And third, there was also the possibility of relocation within the country. If she were to be removed there, she no longer owns the house. She can live somewhere else. And also, her persecutor is a Salvadoran national who lives 12 hours away by bus. And who hasn't been in contact with her since 2016. And all of those findings are findings that she never challenged on review. She took it to the board. She never filed a petition for review. Those issues are settled. And also, when she filed her motion for reconsideration or reopening, whichever way this court takes it, she did not mention any of those three independent and despotic determinations. Yes, Your Honor. What's the difference between inner family abuse and domestic violence? I think that the inner family abuse could be domestic violence. But the motivation is different, right? The motivation with regard to her social group has to do with he is targeting her because she is a Honduran woman who is unable to leave the relationship. Whereas the immigration judge found that the harm is on an alternative ground. That is, his dislike of the stepchildren, of her children, and their interactions with their natural children. So she has children from a former spouse who died. And she has her current children. The children of her former marriage would get in the way of the children from the latter marriage. And then she would get involved. And on the one occasion, she was actually physically harmed. Although there was the later attempt. Yes, Your Honor. So when stepchildren are involved, it's not domestic violence? Oh, no, no. It can still be domestic violence. And the immigration court and the board said this is domestic violence. It's just that the nexus question is, why? And that has to do with whether or not it's because she's in a social group or whether or not her husband is targeting her for other reasons. So one can be the victim of domestic violence for a whole litany of reasons, correct? It's just that the reason why she is a victim of domestic violence in this case doesn't have anything to do with the social group that she is a member of. Or it's unrelated to the social group. But even if this court thinks that that's all tied up very nicely together, that you can't disentangle that, it doesn't matter because the state was willing to intercede. And there's no indication that she can't reasonably relocate were she to be removed back to the Honduras. Yes, Your Honor. You had a question? Yes. It seems strange to me that the factual finding used the word inter instead of intra. Because it seems to me if it's a domestic dispute, regardless of the definition of the family, in this case it included children and stepchildren. But it was a family of some kind. At least that's what domestic violence means. And I sort of thought it might have been a typographical error that that was intended to be intra family dispute. But I'm not sure it makes much difference if the fact finder was suggesting that the dispute arose out of the fact that the source of the children was two different parents previous to this family unit. Right, Your Honor. I think it probably should have been intra as opposed to inter. But I can see why the adjudication judge may have used inter instead. Can you hear me, sir? I can hear you, Your Honor. Can you hear me? Okay. I'm sorry about that. I'm not sure what happened. We were frozen. I think it was around 14 minutes or so. We'll give you some time. Mr. Tennyson, I'll let you argue. I don't know if you'll use the whole time or not, but we'll start with 14 minutes. All right. Thank you, Your Honor. I think we left off. We were talking about whether it was inter or intra family dispute. I would like to go on very quickly and say a person who comes into immigration proceedings, they're not limited to presenting one social group for their asylum claim. In fact, they're encouraged to, I guess what, put the whole menu down. Oh, I think we've lost an N again. Here, I'll just wait. Yeah, if you pause, we'll stop at 1330. We're all on. All right, Mr. Tennyson, we've got your clock at 1328. We stopped at that point, and you can continue your argument. All right. Really, the only other point that I wanted to make is that the petitioner could have raised her social groups earlier. Even if there was a problem with AB and with them applying AB to her case, there were a litany. All of these other social groups she had are dependent upon facts that existed at the time, prior to the time of her hearing, at the time of her hearing. Her counselor encouraged to put before the court all of the potential social groups that they have. Regardless of how you consider this case, whether or not it is a denial of a motion to reopen, a denial of a motion to reconsider, or you go to the due process claim, in either case, there were plenty of reasons for the immigration court to deny her motion. With regard to reopening, she hadn't made a prima facie case on any of those claims that she had, specifically given that she already had three other alternative reasons that were dispositive for why her claim was dismissed. Second, if it's a reconsideration case, it's because there are, again, three alternative reasons why, regardless of whether or not she's right in her reconsideration argument, why the immigration judge there was nothing new to go back to. Finally, if it's a due process claim, if we went all the way to the due process claim, there's no prejudice because there are, again, those three other alternative dispositive reasons. If this court has no further questions for me, the government will rest. All right, thank you, Mr. Tennyson. All right, Mr. Endang, we'll hear from you. Thank you, Your Honor. So, two points, Your Honor. The first is the government stresses the alternative basis. But even as the government was describing them, they were, as Mr. Tennyson put it, the nexus between the proposed PSG that she had put on and her harm, that's sort of the point. All of those findings were made in the context of the proposed social group that she had put on, and all of the underlying facts could be seen in a very different light in terms of a different PSG, one that makes a standard set out in matter of AB. And the second point that the government raised is that she could have, Ms. Vasquez-Caldamas could have raised her particular social groups earlier. And I suppose that's true, but when the Seventh Circuit addressed this exact situation in Chen, it explained when there is a clear precedent on which the applicant reasonably relied that gave the applicant a path to asylum, it's not reasonable to expect that the applicant will nonetheless continue to put in alternative grounds. She had no reason to foresee that ARCG would be, that that rug would be pulled out from under her midway through the process. And it frankly wouldn't make much sense to require her to put on all of this evidence when as a practical matter, it's not the type of thing that the immigration judge should have considered, given that ARCG was the case on which she had built her case. So for these reasons, we think that it's quite clear that if the immigration judge were given the opportunity to reassess the evidence, both the evidence that she had put on and the new evidence that she will put on in support of a redefined particular social group under the new standards, we, this court and the board, shouldn't assume that the immigration judge should assume one way or the other about the immigration judge's findings, but rather should let the immigration judge have that opportunity in the first instance. All right. Is that it? If there are no further questions, then. Thank you very much. You are pro bono, I understand. We appreciate your service in this in this case for for the petitioner. We'll take the court case under advisement and then proceed on to the next case would normally come down in great counsel, as you know. The technology hasn't quite gotten there, but, you know, someday we may be able to beam it up. Thank you so much. Thank you very much. Thank you so much.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker